Judge Marshall
delivered the Opinion of the Court.
The will of Joseph Morgan, deceased, contains the following clause: — “Item 4. It is my will and desire that my two negroes, Rebecca and Mary, be sold privately by my executor, and that they select their own master, without much regard to price.”
Some short time after the probate of the will, the two : negroes applied to Moses Hopkins, requesting him to *18 buy them, and he, professing that he had no need for them, and was willing to buy them only because they wished it, offered to give two hundred dollars for them; which he admits is much less than their value to one who needs them, and wishes to buy. The executor refused to sell them for that price, which he alleges to be less than half their value, and says they were appraised at four hundred and eighty five dollars; that he can sell them for four hundred dollars, or upwards; that he'is willing to sell to Hopkins, and had offered to take three hundred and ten dollars from him.
Executors are trustees in equity, and subject to the control of the chancellor, upon a proper case made out, according to settled principles. But the application must be (not by a stranger) but by one holding, or representing some interest in the trust.
Atestator directs certain slaves to “besoldprivately”by his executor, and that they c shall select their own master without much regard to price.’ They select as master, one who does not need them, but who offers to take them at a sum mot half their value: held that the executor was not bound to accept the offer; the interest of those entitled to the proceeds of the sale, as well as the desire and comfort of the slaves, is to ha regarded.
*18 Hopkins filed his bill, or petition, praying that the executor might be compelled to sell the negroes to him, as the selected master, for two hundred dollars; or that day might be given them to make a selection, and that the executor should be compelled to sell to the person they might choose. The testimony in the cause relates principally to the value of the negroes, and substantially supports the answer on that subject.
Upon the hearing, the bill was dismissed with costs.
Executors are held to be trustees, in equity; and this is substantially an application to the Chancellor, to enforce the execution of a trust, and to control the discretion of the trustee — powers which he does not hesitate to exert in cases properly calling for their exercise. But it must be taken as a rule upon this subject, that the application should be made by one who holds or represents some right or interest in the subject of the trust; and that the Chancellor will not interpose to control the discretion vested in the trustee, unless he can find some fixed principles by which to limit his own. The duty of the trustee must, in all cases, be the main object of enquiry, and this is to be ascertained by enquiring into the design and object of the trust.
In the present case, it is manifest, that the clause of Morgan’s will which has been recited, restricts the right of the executor in selling the negroes Rebecca and Mary, by the privilege of choosing their master; and this privilege the executor cannot disregard. But it is equally apparent from the same clause, that in indulging this privilege, the executor is also required to pay some re *19 gard to the real value of the slaves, and to the interests of those who may be entitled to receive the proceeds of the sale. So to construe this provision as to make it the duty of the executor to sell to any person whom the slaves might select, at such price as he might choose to offer, would deprive the executor of that discretion as to price which is evidently left in him for the benefit of those interested in the estate; while it might, in effect, transfer the whole advantage of the provision to a stranger, without any security that the benevolent design for which the privilege of selection was allowed, would be effectuated. There is no reason to suppose, that the testator intended to make any stranger whom the negroes might select as a master, the peculiar object of his bounty. In the indulgence of a benevolent feeling towards them, he doubtless entertained the idea that the privilege he was conferring would not only impart some gratification to them, but that it might be the means of securing some comfort or indulgence, and his intention was that the difference, if any, between their real value, and the price for which they might be sold to the master of their choice, should redound to their benefit. But for the effectuation of this intention he has provided no guarantee; and the kindness intended for them may be turned into a pecuniary gain to a stranger, if the executor is bound by their selection, and by the price which the person selected may offer. The negroes though sold to the person they may select, will be slaves still. By the very exercise of their privilege, they will lose all privilege, and the purchaser, at whatever price, will find himself their absolute owner, with rights unaffected by any provision of the will..
Slaves having a right, under the will of their deceasedowner, to select the person to whom theexutor shall sell them — the person so selected being willing to give a fair price for them, may maintain a bill to compel the executor to make the sale. But the Chancellor will not, entertain the bill of a stranger, nor of one who will not give such a price as the executor ought to take.
It is impossible to estimate precisely the effect which this privilege should have in graduating the price to be taken by the executor; and therefore, no exact limits can be prescribed within which his discretion as to price should be restricted. But as the testator directs him to sell the negroes privately, and desires that they may select their master without much regard to price, and as the provision was intended as a means of procuring comfort and good treatment to them, it would certainly *20 be his duty to sell to any humane person whom they an<i wh° would give a fair price for them. He has the discretion to take less than their fair value; it may be his duty, under certain circumstances, to take less. The offer of such a price as the executor was bound to take, would, n made by a proper person, entitle him to the purchase, and the refusal of such an offer would be a breach of duty on the part of the executor. A right of purchase so acquired might be asserted and enforced in a court of equity. But the offer of such a price as the Chancellor could not say the executor was bound to take, could not confer the right of purchase, and can form no ground of appeal to the Chancellor.
Tested by these principles, the case made out by the complainant does not entitle him to relief. He has not shown such § state of facts as will authorize the Chancellor to pronounce that it was the duty of the executor to sell to him; and nothing less than such a state of facts could give him the right to coerce a sale to himself. This court cannot decide that it was the duty of the executor, paying due regard to this provision of the will, to sell the negroes, worth four hundred dollars, for two hundred dol-. lars, tlje sum offered by Hopkins.
But the bill prays that day be given to the negroes to select a master, and that the executor be compelled to. sell to the person chosen by them. It might have been more equitable to pray that day be given to the executor, to see if he could get more than the price offered by the complainant, from any person whom the negroes might choose to serve.
For the reasons already stated, the complainant has not shown a right to come into equity with either of these prayers for his own benefit, and it cannot be conceded that he can sue, on this provision of the will, as representing the slaves themselves.
The Circuit Court, therefore, did not err in dismissing the bill with costs; and the decree must be affirmed.